IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRACY ODEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:17-cv-2794-G-BT |
| | § | |
| INFOSYS LIMITED, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action arising out of an employment dispute are two motions seeking a determination as to the validity of an arbitration agreement: (1) a Motion to Dismiss and to Compel Continued Arbitration (ECF No. 14), filed by Defendant Infosys Limited; and (2) an Amended Expedited Motion Requesting Court to Rule on the Validity of an Arbitration Agreement and to Stay Arbitration (ECF No. 20), filed by Plaintiff Tracy Oden. For the following reasons, the District Court should DENY Plaintiff's Motion, GRANT Defendant's Motion, and dismiss this case with prejudice.

**Background**

Plaintiff Tracy Oden alleges that she worked for Defendant Infosys Limited—a multinational business consulting, information technology, and outsourcing services company—as a Senior Practice Engagement Manager from April 11, 2016 to August 26, 2016. Compl. 9 ¶ 39, 16 ¶ 75 (ECF No. 9). Before she went to work for Defendant, Plaintiff owned and operated a product research, development, and

1

commercialization firm and had obtained a United States Patent for a Professional Service Architecture. *Id.* at 2 ¶¶ 6, 7.

In January of 2016, one of Defendant's talent acquisition representatives contacted Plaintiff and encouraged her to apply for a position with Defendant. *Id.* at 3 ¶ 10. Over the next several months, Plaintiff and Defendant engaged in negotiations concerning her possible employment with Defendant. *Id.* 3 ¶ 11. During this process, Plaintiff allegedly disclosed to Defendant that she owned her own company and that she had a patent from which she planned to derive a software product. She also allegedly disclosed the name of the software product, a timeline for the product's release, and her plans to develop a healthcare product. *Id.* 6-7 ¶ 28. In view of these facts, Defendant required Plaintiff to execute a "No Conflict of Interest Statement," by which she which confirmed that, if she were hired, her responsibilities to Defendant would come before those of her own company. *Id.* a 7 ¶ 30. In April of 2016, Defendant extended Plaintiff an offer of employment, which she accepted; and, Plaintiff began her employment with Defendant shortly thereafter. *Id.* 9 ¶¶ 35-36. Defendant awarded Plaintiff a six-figure salary and promised her a bonus after six months of employment. *Id.* 9 ¶ 37.

Approximately two months later, Defendant asked Plaintiff to work on a product that Plaintiff believed would infringe on her patent. *Id.* 10 ¶¶ 43-44. Plaintiff informed her manager of her concerns and asked her manager to coordinate a meeting with management to discuss the issue. *Id.* at 13 ¶ 63. Plaintiff did not receive a response from her manager for four weeks, so she sent two emails

to her manager seeking a meeting to discuss and resolve the matter. *Id.* 14 ¶¶ 67-69. At the end of August, Plaintiff was invited to participate in a conference call with Human Resources and her manager. *Id.* 16 ¶ 74. On August 26, 2016, during the conference call, Defendant terminated Plaintiff's employment. *Id.* at 16 ¶ 75.

Based on these alleged facts, Plaintiff commenced an arbitration proceeding in which she asserted claims against Defendant arising out of the termination of her employment. Several months later, Plaintiff filed this lawsuit against Defendant asserting claims for wrongful termination under *Sabine Pilot Service Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985);[1] fraudulent misrepresentation; fraudulent inducement of employment; corporate nonfeasance, misfeasance, and malfeasance; unjust enrichment; and intentional infliction of emotional distress. Compl. 16-22. Defendant responded by filing a motion to dismiss Plaintiff's lawsuit and to compel her to continue arbitration on the ground that the parties entered into a Mutual Arbitration Agreement ("MAA"), which covers all of Plaintiff's employment-related claims. Def.'s Br. 11, 13, 14 (ECF No. 15). Plaintiff filed a separate motion in which she argues that the MAA is invalid because Defendant fraudulently induced her into employment, and the terms of the MAA are unconscionable. Both motions have been fully briefed and are ripe for determination.

## Legal Standards and Analysis

The Federal Arbitration Act ("FAA") reflects a national policy favoring arbitration. *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 543 (5th Cir.

---

[1] *Sabine Pilot* grants a cause of action for at-will employees terminated solely because they refuse to commit a crime. *Sabine Pilot*, 687 S.W.2d. at 735.

3

2016) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581 (2008)). Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). A court makes two determinations when deciding a motion to enforce an arbitration agreement. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). First, the court asks whether there is a valid agreement to arbitrate and whether the current dispute falls within the scope of a valid agreement. *Id.* Second, the court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

**Validity and Scope of Arbitration Agreement**

Defendant argues that the MAA is valid because the parties entered into a valid agreement to arbitrate all of Plaintiff's employment-related claims. Def.'s Br. 11. Plaintiff responds there is not a valid arbitration agreement between the parties because she was fraudulently induced into employment and that the terms of the MAA are unconscionable. Resp. 5, 24, 28 (ECF No. 29).

The validity of an arbitration agreement is a question of state contract law. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Kubala v. Supreme Prod. Servs.*, Inc., 830 F.3d 199, 202 (5th Cir. 2016)). The Court should apply "ordinary state-law principles that govern the formation of contracts. *Graves v. BP AM., Inc.,* 568 F.3d 221, 222 (5th Cir. 2009) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba*, 892 F.3d at 689 (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012) (per curiam).

Defendant argues that all elements for a binding contract under Texas law are satisfied. Def.'s Br. 12. Specifically, Defendant states that it (1) offered Plaintiff a position contingent on her signing the MAA; (2) Plaintiff accepted and signed the

5

arbitration agreement; (3) Plaintiff's signature is strong evidence of her assent—or a meeting of the minds; (4) the parties consented to the terms by entering into an employment relationship; and (5) the Plaintiff signed the an offer letter and the MAA and delivered both to the Defendant. *Id.* Plaintiff did not respond to Defendant's argument and did not dispute any of the facts relied on by Defendant. Indeed, Plaintiff acknowledged that she signed the MAA, which is strong evidence that she accepted and agreed to the MAA.

Plaintiff argues that—regardless of her acceptance of the MAA—the agreement to arbitrate is unenforceable because she was fraudulently induced into employment through Defendant's misrepresentations. "[I]f [Plaintiff's] claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967)). Plaintiff's assertion that she was fraudulently induced into employment is a claim of fraud in the inducement of the contract as a whole. As such, Plaintiff's fraudulent inducement defense can be arbitrated. Plaintiff has not offered any other argument challenging the validity of the MAA. Therefore, the Court finds that Defendant has proved the existence of a valid arbitration agreement by a preponderance of the evidence.

"When determining whether a dispute is covered by the scope of an arbitration agreement, the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quoting *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005)). Generally, language within the arbitration clause stating that the clause governs all disputes "relating to" the agreement is interpreted as a broad provision covering almost all disputes arising between the parties to a contract. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998) ("courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract").

Here, Defendant has presented evidence of the MAA signed by Plaintiff. The relevant text of the parties' mutual arbitration agreement provides the following claims are covered by the arbitration agreement:

> . . . *any and all* existing or future *disputes or claims between Employee and Infosys, that arise out of or relate to Employee's recruitment, employment or separation from employment with Infosy*s, including claims involving any current or former officer, director, shareholder, agent or employee of Infosys, whether the disputes or claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following claims:
>
> • claims for *fraud*, promissory estoppel*, fraudulent inducement of contract* or breach of contract or contractual obligation, whether such alleged contract or obligation be oral, written, or express or implied by fact or law;

7

> • claims for *wrongful termination of employment*, violation of public policy and constructive discharge, *infliction of emotional distress*, *misrepresentation*, interference with contract or prospective economic advantage, defamation, unfair business practices, and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof . . .

Def.'s Appx. at Ex. F (ECF No. 16) (emphasis added).

The MAA covers all of Plaintiff's claims asserted in this case: wrongful termination in violation of the *Sabine Pilot* doctrine; fraudulent misrepresentation; fraudulent inducement of employment contract; unfair business practices, including corporate nonfeasance, misfeasance, and/or malfeasance, and unjust enrichment; and intentional infliction of emotional distress. Accordingly, the Court finds that these claims fall within the scope of the MAA.

### Unconscionability

Plaintiff also argues that the terms of the MAA are procedurally unconscionable due to the circumstances surrounding the execution of the MAA. More specifically, Plaintiff contends that Defendant knew Plaintiff did not have the same advantage as Defendant in negotiating contract terms, and the MAA was a condition of employment that was presented on a take-it-or-leave-it basis. Plaintiff further argues that the MAA is substantively unconscionable because the terms are unreasonably favorable to Defendant and unfair to Plaintiff. Pl.'s Resp. 28-29.

"An unconscionable contract 'is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms.'" *Alamo Moving Storage v. Mayflower Trans.*, 46 F. App'x. 731 (5th Cir. 2002) (quoting *Pony Exp. Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.-San Antonio 1996, no writ)). "Under Texas

8

law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *Carter*, 362 F.3d at 301 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." *Id.* This is a heavy burden to satisfy. "The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d at 1077. "[T]he basic test for [substantive] unconscionability is whether . . . the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Pacheco v. PCM Const. Servs.*, L.L.C., 2014 WL 145147, at *4 (N.D. Tex. 2014), *aff'd* 602 F. App'x. 945 (5th Cir. 2015) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). "The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006). It is not unconscionable for Texas employers to offer at-will employees a take-it-or-leave-it agreement that includes binding arbitration. *Id.* (Citing *In re Halliburton Co.*, 80 S.W.3d at 572). "[A] mere imbalance in the parties' sophistication is not sufficient to render an agreement unconscionable." *White v. SoftLayer Techn.*, 2015 WL 5052365, at *6 (N.D. Tex. 2015) (citing *Fleetwood*, 280

9

F.3d at 1077).

Plaintiff's arguments that the MAA is unfair and one-sided do not rise to the level of unconscionability that would invalidate the MAA. She has not identified facts to demonstrate the MAA was procedurally or substantively unconscionable. Accordingly, Plaintiff has not carried her burden to show that the MAA was unconscionable.

Because all of the issues raised in Plaintiff's Complaint must be submitted to arbitration, the Court should dismiss this civil action. *See Ruiz v. Donahoe*, 784 F.3d 247, 250 (5th Cir. 2015); *Adams Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013)); *accord Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

## **RECOMMENDATION**

For the reasons stated, the District Court should DENY Plaintiff's Amended Expedited Motion Requesting Court to Rule on the Validity of an Arbitration Agreement and to Stay Arbitration (ECF No. 20), GRANT Defendant's Motion to Dismiss and Compel Continued Arbitration (ECF No. 14), and dismiss this case with prejudice.

**SO RECOMMENDED**.

August 31, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).